## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FELANDO D. HUNTER,

              Petitioner,                Case Number: 2:18-CV-11117
                                            HONORABLE NANCY G. EDMUNDS

v.

DANIEL LESATZ,

              Respondent.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF
### HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Felando D. Hunter, currently in the custody of the Michigan Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for two counts of first-degree murder, Mich. Comp. Laws § 750.316(1), torture, Mich. Comp. Laws § 750.85, armed robbery, Mich. Comp. Laws § 750.529, unlawful imprisonment, Mich. Comp. Laws § 750.349b, and possessing a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b(1).  Hunter raises these claims: police coerced a witness into incriminating him; the trial court failed to swear prospective jurors before jury selection; and counsel was ineffective for failing to object to these violations.  For the reasons explained below, the Court denies the petition.

### I.  Background

This case arises from the robbery and murder of Jacob Kudla and Jourdan

Bobbish.  The Michigan Court of Appeals described the facts underlying Hunter's

convictions as follows:

> The victims in this case, Jacob Kudla (Jacob) and Jourdan Bobbish
> (Jourdan), were last seen alive on July 22, 2012.  Their bodies were
> discovered in an empty field in Detroit on July 27, 2012.  Jacob had been
> shot in the back and in the head, while Jourdan died from a single shot to
> the back of his head.
>
> The testimony of several witnesses pieced together Jacob and Jourdan's
> final hours.  Jacob and Jourdan had driven from Warren to Detroit, seeking
> to buy prescription drugs.  They encountered Fredrick [Kyle Young] and
> Felando, who took them to a home in Detroit.  There, Fredrick and Felando
> ordered the two to the ground, stripped them of their outer clothing, and
> robbed them of cash and prescription pills.  They then forced Jacob and
> Jourdan into the trunk of a car and drove for approximately an hour before
> finding a suitable location.  Once Fredrick and Felando found an empty
> field, they instructed Jacob and Jourdan to leave the vehicle and get on their
> knees.  Felando shot Jourdan in the head with a revolver, and Fredrick shot
> Jacob in the back with a rifle.  While Jourdan died instantly, Jacob did not.
> Jacob was then shot in the head. After killing the two young men, Fredrick
> and Felando picked up a bottle of liquor, took the car that had been driven
> by Jacob and Jourdan to another location, and doused it with bleach.
>
> A short time later, Felando spoke with an acquaintance, Demerious
> Cunningham (Demerious).  Felando explained his and Fredrick's
> involvement in the crimes to Demerious.  Demerious later provided this
> information to police.  Several other witnesses who had seen or heard the
> events that occurred at the home also came forward and testified at trial.

*People v. Hunter*, No. 326092, 2016 WL 1045631, *1 (Mich. Ct. App. March 15, 2016).

Hunter and co-defendant Fredrick Kyle Young were tried before a single jury in

Wayne County Circuit Court.  Hunter was convicted and sentenced as follows: life

imprisonment for the first-degree murder convictions, 50 to 75 years for the  torture

conviction, 50 to 75 years for the armed robbery conviction, 3 to 15 years for the

unlawful imprisonment conviction, and 2 years for the felony-firearm conviction.

Hunter filed an appeal of right to the Michigan Court of Appeals raising the same claims presented in this petition. The Michigan Court of Appeals remanded the case to the trial court for correction of the judgment of sentence to reflect that Hunter's first-degree murder convictions were under two different theories, and affirmed Hunter's convictions in all other respects. *Id.* Hunter's application for leave to appeal to the Michigan Supreme Court was denied. *People v. Hunter*, 500 Mich. 958 (Mich. Apr. 4, 2017).

Hunter then filed the pending habeas corpus petition. He raises the same claims raised on direct appeal in state court:

> I. The police violated appellant's due process rights by coercing a witness into incriminating appellant; alternatively, defense trial counsel was constitutionally ineffective in failing to move to suppress the testimony of the witness.

> II. The trial court violated appellant's due process rights by failing to swear the prospective jurors before selection; alternatively, defense trial counsel was constitutionally ineffective in failing to object.

Respondent has filed an answer in opposition and the relevant state court records and transcripts.

## II.  Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous ... The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

4

(2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 102-03(internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Greene v. Fisher*, 565 U.S. 34, 38 (2011).  Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual

determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Id.*

### III.  Discussion

### A.  Concurrent Sentence Doctrine

Respondent argues the Court should decline to review Hunter's claims under the concurrent sentence doctrine because Hunter is serving two life sentences for first-degree murder convictions in an unrelated case.

Under the concurrent sentence doctrine, a federal court may decline to review a challenge to a conviction "when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989).  The Sixth Circuit "has been admittedly hesitant to apply this doctrine, invoking it only when there is no possibility of 'adverse consequences' if the convictions stand." *Pillette v. Berghuis*, 408 F. App'x 873, 886 n.8 (6th Cir. 2010) (citations omitted).  Adverse consequences that will prevent a court from applying the doctrine include: "an effect on parole or a potential pardon, the existence of state recidivist statutes, the possibility of impeachment at a future trial, the potential for use as evidence of a prior bad act, and possible stigma." *Id.*  Respondent fails to demonstrate a lack of collateral consequences attaching to Hunter's convictions.  The Court declines to invoke the concurrent sentence doctrine

### B.  Witness Intimidation

In his first claim, Hunter argues that admission of Demerious Cunningham's

testimony that Hunter confessed to the murder violated due process and his right to a fair

trial because police officer Allen Williams coerced Demerious Cunningham into falsely

testifying.[1] The Michigan Court of Appeals concluded that Hunter's rights were not

violated:

> "Both our Supreme Court and this Court have strongly condemned prosecutorial intimidation of witnesses."[44] "Threats from law enforcement officers may be attributed to the prosecution."[45] On appeal, Felando claims that police officers intimidated Demerious with threats of criminal charges "contemporaneously with questioning [him] about the present case." This factual assertion is false. Even Demerious testified that he was not threatened or intimidated during the car ride where he was asked about the present matter. Further, the only "threat" of any sort that is found in the record is a threat that Demerious could face criminal charges if he lied to police. There is no prohibition against informing a witness of the potential consequences of making false statements.[46] Felando has failed to demonstrate error requiring reversal.
>
> ---
> [44] *People v. Stacy*, 193 Mich. App. 19, 25; 484 NW2d 675 (1992).
>
> [45] *Id.*
>
> [46] *See People v. Layher*, 238 Mich. App. 573, 587; 607 NW2d 91 (1999), aff'd 464 Mich. 756 (2001) ("[A] prosecutor may inform a witness that false testimony could result in a perjury charge.").

*Hunter*, 2016 WL 1045631 at *5.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable

---

[1] Respondent argues that both claims raised in the petition are procedurally defaulted because defense counsel failed to object. The Court will, in the interest of judicial economy, bypass the procedural default question and proceed directly to the merits of both claims. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel [addressing the merits of a claim] if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").

application of, Supreme Court precedent.  The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations and internal quotations omitted).  Here, however, Hunter fails to establish that false evidence was presented.

Hunter argues that Cunningham implicated Hunter because he was threatened with criminal charges if he did not do so.  But the record does not support this argument.  Officer Williams testified that the did not threaten Hunter, but advised Hunter that he could be charged with a crime if he lied to the police.  Hunter testified that after police told him he could be charged with a crime he told the truth.  Hunter was questioned and cross-examined extensively about the circumstances of the police interviews.  The jury was informed about Hunter's possible motivations for testifying as he did.  Due process is not violated by the admission of witness testimony allegedly secured through police intimidation where the jury heard evidence regarding the alleged intimation.  *See Johnson v. Bell*, 525 F.3d 466, 481 (6th Cir. 2008); *Bacon v. Klee*, No. 15-2491, 2016 WL 7009108, *2 (6th Cir. 2016).

Hunter argues that the state court's decision was an unreasonable application of *Webb v. Texas,* 409 U.S. 95 (2008).  *Webb* is inapposite.  In *Webb*, the trial court "gratuitously singled out" the single defense witness for a "lengthy admonition of the dangers of perjury," including advising the witness that if he lied on the stand "he would be prosecuted and probably convicted for perjury."  *Id.* at 97-98.  No prosecution

witnesses were given similar warnings.  The witness then refused to testify.  The Supreme Court found that the trial judge's remarks "effectively drove that witness off the stand" and denied the defendant due process.  *Id.* at 98.

In contrast, this case does not involve a witness's failure to testify.  Cunningham testified and both sides were able to explore the circumstances of his testimony implicating Hunter.  This is clearly distinguishable from the trial court's conduct in *Webb* which was gratuitous and led to the witness's absence.  Here, the jury was properly left to consider the circumstances surrounding Cunningham's testimony and evaluate the impact on Cunningham's credibility.  The determination whether a witness is being truthful is properly left to the jury.  This claim is denied.

Hunter's related ineffective assistance of counsel claim is also meritless.  An ineffective assistance of counsel claim has two components.  A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under AEDPA, "the question" for this Court "is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The Michigan Court of Appeals held that counsel was not ineffective in failing to object to Cunningham's testimony because any objection would have been futile.  *Hunter*, 2016 WL 1045631 at *5.  Because Cunningham's testimony was properly admitted, counsel was not ineffective for failing to object.  *See Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016).  Habeas relief is denied on this claim.

9

### C.  Jury Oath

In his second claim, Hunter argues that the trial court violated his right to due process by failing to administer an oath to prospective jurors prior to *voir dire*.  *See* Mich. Ct. R. 6.412(B) (providing that a trial court must have potential jurors sworn "[b]efore beginning the jury selection process[.]").  He further argues that counsel was ineffective in failing to object and preserve this claim for review.

The Michigan Court of Appeals rejected Hunter's argument that the failure to administer an oath was a structural error, and concluded that petitioner failed to establish prejudice.  *Hunter*, 2016 WL 1045631 at *6.  The state court noted that, after the final jury was selected, "the jurors were sworn to truly deliberate the case, and were later reminded that they had taken an oath to return a true and just verdict based only on the evidence and [the trial court's] instructions on the law."  *Hunter*, 2016 WL 1045631, at *6 (internal quotation omitted). The court of appeals found "no evidence in the record indicating that any juror that decided this case withheld any information that would have led to that individual being removed from the jury", and concluded that Hunter "was actually ensured a fair and impartial jury." *Id.*  at *7 (internal quotation and citation omitted).  .

The trial court's failure to comply with Rule 6.412(B) does not present a claim cognizable on habeas review.  Habeas review does not lie for errors of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Hunter also is not entitled to relief on the basis of his argument that the failure to swear the jury venire violated due process. Hunter

fails to cite a case holding that the federal Constitution requires a trial court to swear a jury venire prior to voir dire. Thus, the Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law. *Accord Robertson v. McKee*, No. 09-14675, 2012 WL 263099, at *4 (E.D. Mich. Jan. 30, 2012) ("Petitioner has failed to show that the federal Constitution is violated where the trial court fails to swear a prospective jury pool prior to voir dire").

The Michigan Court of Appeals held that counsel was not ineffective in failing to raise the trial court's failure to comply with Rule 6.412(B) in the trial court. To show that counsel was ineffective, Hunter must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland*, 466 U.S. at 687. The Michigan Court of Appeals proceeded directly to *Strickland*'s prejudice prong and held that, because Hunter failed to demonstrate that his jury was not impartial, he failed to show prejudice. *Young,* 2016 WL 1045631 at *7. The Michigan Court of Appeals' decision that Hunter failed to show his jury was not impartial was not unreasonable, therefore, the Court concludes that the state court's decision that defense counsel was not ineffective also is not contrary to, or an unreasonable application of, Supreme Court precedent.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U .S.C. § 2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## V.  Conclusion

The petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

 s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated: April 30, 2020